# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD H. MILGRUB ) | |
|     Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 03:05-332 |
| ) | |
| CONTINENTAL CASUALTY ) | JUDGE KIM R. GIBSON |
| COMPANY, ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### INTRODUCTION

This matter comes before the Court on cross motions for Judgment on the Pleadings (Document Nos. 8 & 11), Memoranda of Law in support thereof (Document Nos. 10 & 12) and responses thereto (Document Nos. 11 & 13). Plaintiff Richard H. Milgrub (hereinafter "Milgrub," "Plaintiff," or "Insured") originally filed this lawsuit in the Pennsylvania Court of Common Pleas for Clearfield County on July 7, 2005, seeking coverage under an insurance policy for attorney malpractice. Notice of Removal (Document No. 1), p. 1. Defendant, Continental Casualty Company (hereinafter "Continental" or "Defendant") removed the case to this Court on August 15, 2005, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). *Id.* Continental filed its Answer to the Complaint (Document No. 6) on August 23, 2005, and sought judgment on the pleadings on October 20, 2005 (Document No. 8). Plaintiff filed his Cross-Motion for Judgment on the Pleadings on October 31, 2005, and responded to Defendant's motion that same day. Document No. 11. For the reasons that follow, both motions are granted in part and denied in part.

On July 24, 2003, Continental issued Lawyers Professional Liability Policy Number LAW-

1

249664564 ("the Policy"), insuring Plaintiff against any malpractice liability he incurred from August 1, 2003, until August 1, 2004. Document No. 1, Exh. A-1, p. 6. The policy covered "all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages and claim expenses because of a claim that is . . . made against the Insured . . . by reason of an act or omission in the performance of legal services by the Insured. . . ." *Id.* at 19. The exception to this coverage most relevant to the matter *sub judice* is found in Section IV.D of the policy (hereinafter "Exclusion D"): "This Policy does not apply . . . . to any claim based on or arising out of the Insured's alleged liability under any oral or written contract or agreement, unless such liability would have attached to the Insured in the absence of such agreement." *Id.* at 27.

On September 9, 2003, Milgrub and his wife, Marjorie, entered into a contract with Robert and Shellie Brown ("the Browns") for the sale of residential real estate. *See* Document No. 1, Exh. A-2, p. 1. In a scenario that tests the boundaries of professional ethics and common sense, Plaintiff acted as both the seller and the Browns' legal representative in the transaction. Perhaps unsurprisingly, this conflict of interests evolved into a lawsuit, and in November 2004 the Browns filed an action against the Milgrubs in Pennsylvania state court. Document No. 1, Exh. A-1, p. 37. Against both Richard and Marjorie Milgrub, the Browns alleged fraudulent representation and claims under the Pennsylvania Sellers Disclosure Act and the Unfair Trade Practices Consumer Protection Act. *Id.* at 41-44. In Counts IV and V of their complaint, the Browns also stated claims against Milgrub individually, alleging breach of fiduciary obligation and professional negligence stemming from his conduct as the Browns' lawyer. *Id.* at 45-47. Milgrub forwarded the Browns' complaint to Continental on February 14, 2005, and shortly thereafter received Defendant's response that the Brown action fell outside the policy and no coverage would be available. Document No. 1, Exh. A-2, pp. 24-29. Plaintiff then filed

a separate action against Continental seeking declaratory and injunctive relief requiring that Defendant provide the coverage described in the Policy, "as well as counsel fees, costs, and interest as permitted by law." Document No. 1, Exh. A-1, pp. 3-4.

Continental's Motion for Judgment on the Pleadings argues that there is no coverage for the Browns' claims against Milgrub and his wife in their capacities as the sellers of real estate. Document No. 10, p. 6-7. Regarding the professional-liability claims against Milgrub, Defendant asserts that "[b]ecause the Browns would have no professional liability claims against Milgrub but for Milgrub's status as a party to the real estate sales contract, it is self evident that the Browns' claims 'are based on or aris[e] out of [Milgrub's] alleged liability under [the real estate contract]." *Id.* at 8. The presence of the land-sale contract triggers Exclusion D as to all of the Browns' allegations, not just those directly stemming from the purchase agreement:

> The allegations in Count IV and Count V, although cast as professional liability claims, in fact derive directly from Plaintiff's status as a party to the contract to sell his home to the Browns. His status as the seller is an essential element of each claim, without which there would be no claim.

*Id.* at 9. In other words, because the conflict of interest on which the Browns' malpractice claims are based could not exist were Milgrub not privately involved in the land contract, Exclusion D entitles Defendant to withhold the coverage that Plaintiff seeks. For additional support, Continental draws on the gist-of-the-action doctrine, according to which "an insurer has no duty to defend or indemnify an insured for a contract action when the policy contains an express contractual claim exclusion." *Id.* at 10-11 (quoting *Temple Univ. Health Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1547, 2005 Phila. Ct. Com. Pl. LEXIS 1, \*\*13-14 (Phil. Ct. Com. Pl. March 18, 2005).

Although Milgrub also espouses the "but for" test for determining Exclusion D's applicability,

he insists that Continental has wrongly applied it with regard to Counts IV and V.[1] Document No. 12, pp. 10-11. According to Plaintiff, those counts "would not exist but for the fact that Mr. Milgrub was alleged to be acting as an attorney during the transaction." Document No. 12, p. 2. Thus, because the two counts are styled "professional liability claims" and because the allegations therein are based on Milgrub's performance as the Browns' attorney, Exclusion D does not apply. *Id.* at 4-9. "None of the alleged tortious conduct allegedly committed by Mr. Milgrub as set forth in Counts IV and V of the Brown Complaint attaches because Mr. Milgrub was acting as a seller, the alleged tortious conduct arises completely out of his alleged conduct as an attorney." *Id.* at 12. Milgrub's argument is essentially the reverse to Continental's obverse: whereas the latter insists that Exclusion D applies because Counts IV and V would not exist but for Milgrub's involvement in the land-sale contract, the former asserts that Exclusion D is irrelevant because the Browns' malpractice claims could not exist but for his work as their attorney. Since professional liability could attach even if he were not the seller, Milgrub contends that the exception contained in the last clause of Exclusion D applies and the Court can properly issue judgment for Plaintiff. *Id.* at 12-13.

## LEGAL STANDARD

According to FED. R. CIV. P. 12(c),

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

"Judgment will not be granted unless the movant clearly establishes there are no material issues of fact,

---

[1] Plaintiff concedes that Exclusion D applies to the first three counts of the Browns' complaint. Document No. 11, p. 2.

and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). The Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* Moreover,

> [m]erely attaching documents to a Rule 12(c) motion . . . does not convert it to a motion under Rule 56. In ruling on a motion to dismiss, a trial court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Further, in ruling on the motion a court generally has "discretion to address evidence outside the complaint."

*CitiSteel USA, Inc. v. GE Co.*, 78 Fed. Appx. 832, 835 (3d Cir. 2003) (nonprecedential opinion) (quoting *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) and *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002), respectively).

## DISCUSSION

The Court first notes that the Parties' Motions are properly timed, as the pleadings in this case closed when Continental filed its Answer on August 23, 2005. Document No. 6. Furthermore, the Court is not limited in its analysis to the Complaint and Answer, but may consider other documents submitted by the Parties outside of their pleadings. Specifically, the Browns' complaint against Milgrub and the Policy itself are both documents central to this case, and neither Party has objected to the authenticity of the copies attached to Defendant's Notice of Removal.

According to Exclusion D, coverage is not available for any claim "based on or arising out of the Insured's alleged liability under any oral or written contract or agreement. . . ." Document No. 1, Exh. A-1, p. 27. There is an exception written into this clause, however: coverage is available for such claims if Milgrub's liability "would have attached. . . in the absence of" the oral or written contract or

5

agreement. *Id.* Under Pennsylvania law,

> [t]he policy language "arising out of" is very broad and vague. It must, therefore, "be construed strictly against the insurer and liberally in favor of the insured." Construed in this manner, "'arising out of' means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship is enough to satisfy this provision of the policy."

*Aetna Casualty & Sur. Co. v. Ocean Accident & Guarantee Corp.*, 386 F.2d 413, 415 (3d Cir. 1967) (quoting *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa. 1961)). "Pennsylvania federal and state courts have extended *Goodville* to general liability policies which contain an 'arising out of' clause." *Pa. Tpk. Comm'n v. Transcon. Ins. Co.*, No. 94-5039, 1995 U.S. Dist. LEXIS 11089, **15-16 (E.D. Pa. Aug. 7, 1995) (listing cases). Read accordingly, Exclusion D thus exempts Continental from covering Milgrub's professional liability when it would not attach but for the existence of some "oral or written contract or agreement."[2]

The Court finds that Plaintiff could not possibly be liable under Count V of the Browns' complaint but for his participation in the land-sale contract. The allegations therein stem entirely from the conflict of interest created when Milgrub simultaneously sold his house and acted as the buyers' attorney:

> As a direct and proximate result of the negligence of [Milgrub], in failing to secure a waiver of [his] inherent conflict of interest and representing [the Browns] despite the existence of such an inherent conflict of interest, [the Browns] were deprived of effective representation and their interests were unprotected in the real estate transaction.
> As a direct and proximate result of this deprival of effective representation [the Browns] were denied a disclosure of the true condition of the property, lost their

---

[2] The Court is somewhat mystified that the Parties agreed on Exclusion D, which, by its terms, seems broad enough to swallow the entire Policy. The retention of an attorney is obviously a form of contract, and malpractice liability stemming from that representation would certainly not attach but for the attorney-client relationship. Because such an interpretation would invalidate the Policy for lack of consideration, however, the Court assumes that retainer agreements do not come within the operation of Exclusion D. *Walsh v. Schlecht*, 429 U.S. 401, 408, 97 S. Ct. 679, 50 L. Ed. 2d 641 (1977) (noting the "general rule of construction [that] presumes the legality and enforceability of contracts").

6

>ability to seek compensation or repairs to the property for the damages ascertained in their inspection, . . . . [and] sustained damages. . . .

Document No. 1, Exh. A-1, p. 47. Milgrub's failure to secure a proper waiver was professional negligence that left the Browns without effective representation. But for this impermissible conflict of interests, the Browns' professional-negligence claim would necessarily fail. That Count V proceeds on a theory of professional negligence does not rescue Plaintiff from the fact that his potential liability thereunder is a product of his outside contract with the Browns. *Madison Constr. Co. v. The Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109-10 (Pa. 1999) (holding that "[a]n insurer's duty to defend is determined by the allegations in the underlying complaint. . . . regardless of the language chosen by the plaintiff. . . ."). Nor does it matter that Plaintiff's involvement in that contract comprises only one half of the conflicting interests that ground Count V. To trigger Exclusion D, Defendant need only establish what is evident from the Browns' complaint: but for Milgrub's role as a seller of property, the professional-negligence claim could not survive.

It is not obvious, however, that the Browns' allegation regarding Milgrub's fiduciary duties depends on any conflict of interest. Exclusion D is expressly inapplicable when potential liability is independent of any outside contract. The determinative question is thus whether Plaintiff's representation of conflicting interests is an element of the Browns' fiduciary-duty claim.

The fiduciary obligations an attorney owes his clients are among the most stringent to be found. "It is axiomatic that an attorney who undertakes representation of a client owes that client both a duty of competent representation and the highest duty of honesty, fidelity, and confidentiality." *Capital Care Corp. v. Hunt*, 847 A.2d 75, 84 (Pa. Super. Ct. 2004) (citing *Office of Disciplinary Counsel v. Holston*, 619 A.2d 1054 (Pa. 1993)). In the common law, each lawyer must "comply with obligations concerning

the client's confidences and property, avoid impermissible conflicting interests, deal honestly with the client, and not employ advantages arising from the client-lawyer relationship in a manner adverse to the client." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 16(3) (2000). Fulfilling all of these fiduciary duties requires more from a lawyer than that he avoid conflicts of interest. A lawyer must also not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." PA. R.P.C. 8.4 (2002).[3] Thus, an attorney who withholds information material to a client risks civil liability for breach of a fiduciary obligation: "It is well-settled law . . . that attorneys owe their clients a fiduciary duty. The duty includes undivided loyalty, candor, and provision of material information." *Huber v. Taylor*, No. 05-1757, 2006 U.S. App. LEXIS 27088, **39-40 (3d Cir. Oct. 31, 2006) (precedential opinion) (citations omitted). *See also T. Frederick Jackson, Inc. v. Pepper, Hamilton & Scheetz, LLP*, No. 98-140, 2000 U.S. Dist. LEXIS 4897, *40 (D. Del. March 28, 2000) ("Under New York law, as part of his or her fiduciary duty, an attorney must provide the client with all information material to the client's decision to pursue a given course of action or to abstain therefrom.").

Count IV claims that Plaintiff breached his fiduciary duties to the Browns in the following ways:

(a) In misrepresenting to [the Browns] that he had "other buyers" in mind in order to induce [them] to waive their ability to seek compensation or repairs to the property for the damages ascertained by their inspection process or to negotiate revision to the Agreement of Sale relating to the true condition of the property

(b) In failing to disclose to [the Browns] negative conditions of the demised premises which [Milgrub] knew existed;

(c) In misrepresenting to [the Browns] in the Sellers' Disclosure Statement the condition of the demised premises;

(d) In demanding that [the Browns] close on the property without seeking

---

[3] The Court is aware that violation of a professional rule of ethics will not by itself give rise to civil liability. *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992) ("[S]imply because a lawyer's conduct may violate the rules of ethics does not mean that the conduct is actionable, in damages or for injunctive relief."). In investigating Milgrub's professional duties, however, the Court finds a particular probity in Pennsylvania's code of professional conduct.

8

>  
> recourse or compensation necessary to repair defects to the property discovered by [the Browns] in the inspection process;
> (e) In failing to secure a waiver of this inherent conflict of interest before representing [the Browns] in this transaction.

Document No. 1, Exh. A-1, pp. 45-46. Of these five allegations, only three—(a), (c), and (e)—rely on the conflict of interest engendered by Milgrub's real-estate contract. In subparagraphs (b) and (d), however, the Browns make factual allegations independent of any such conflict. To show that Plaintiff breached his fiduciary obligation by withholding material information, the Browns need only demonstrate that Milgrub was their representative in the real estate transaction, knew information material to the Browns' interests, and failed to convey that information to his clients. While a conflict of interest might explain why material information was withheld, it is not an element of this aspect of Count IV. Milgrub can thus incur liability for breaching his fiduciary obligation whether or not he represented conflicting interests; in the language of Exclusion D, "such liability would . . . attach[] to the Insured in the absence of" his land contract with the Browns. Accordingly, Continental is not entitled to judgment in this regard.

The same can be said of the allegation made in subparagraph (d). If civil liability attaches to Milgrub for compelling the Browns to act against their best interest, it will not rely on any outside contract. Again, while a conflict of interest may be helpful in understanding Milgrub's motivation, it is not a necessary aspect of the claim. Because Milgrub may be held liable for breaching his fiduciary obligations to the Browns regardless of his interest in the Browns' land purchase, Exclusion D does not apply and Continental must provide coverage for this aspect of the Browns' Count IV.

Continental's gist-of-the-action argument is unavailing in this context. One court summarized Pennsylvania's application of this doctrine as follows:

9

> [T]he doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Etoll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (citations omitted). However,

> a breach of contract may give rise to an actionable tort where the wrong ascribed to the defendant is the gist of the action, the contract being collateral. The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus.

*Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 582 (Pa. Super. Ct. 2003) (citations omitted). The gist of the Browns' fiduciary-duty claim is a tort premised on the social policies that define an agent's responsibilities to the principal. The true nature of the action thus does not sanction Continental's denial of coverage. *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104-05 (3d Cir. 2001) (allowing a separate tort action based on the breach of fiduciary duties imposed by social policy).

## CONCLUSION

As the Parties have no factual dispute and the construction of insurance policies is a question of law, judgment on the pleadings is appropriate in this matter. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005). While Exclusion D of the Policy explicitly exempts from coverage all claims arising out of outside contracts, it also contains an exception for liability that would attach regardless of any outside contract. Because the claims stated in Count V of the Browns' complaint could not exist but for Milgrub's conflict of interest, Continental need not cover Plaintiff's defense of those claims. However, to the extent Milgrub breached his fiduciary duties, he may have done so irrespective of any conflict of interest. Accordingly, while Defendant merits judgment on the pleadings as to the Browns' claim for professional negligence, the Court will enter judgment on the pleadings for Plaintiff as to the

Browns' claim for breach of fiduciary obligations. Defendant must therefore provide the bargained-for coverage stipulated in the Policy as to Plaintiff's defense to subparagraphs (b) and (d) stated in ¶ 34 of the Browns' complaint.

An appropriate Order follows.

**AND NOW**, this 3rd day of January, 2007, upon consideration of the Motions for Judgment on the Pleadings filed by Defendant Continental Casualty Co. (Document No. 8) and Plaintiff Richard H. Milgrub (Document No. 11), **IT IS HEREBY ORDERED** that both Motions are **DENIED IN PART** and **GRANTED IN PART**. Specifically, Defendant's Motion is denied as to Plaintiff's defense of the allegations stated in ¶ 34(b) and ¶ 34(d) of the complaint filed by Robert and Shellie Brown in the Court of Common Pleas of Clearfield County. Defendant's Motion is granted in all other respects. Plaintiff's Motion is granted to the extent that Defendant must provide the agreed upon coverage as to Plaintiff's defense of the allegations stated in ¶ 34(b) and ¶ 34(d) of the complaint filed by Robert and Shellie Brown in the Court of Common Pleas of Clearfield County. Plaintiff's Motion is denied in all other respects.

**IT IS FURTHER ORDERED** that the Parties are to submit for the Court's review arguments and accountings as to the issue of damages. Filings in this regard should update the Court on activity in the Browns' state court action against Plaintiff Richard H. Milgrub and present arguments concerning any contractual limitations on damages as set forth in Lawyers Professional Liability Policy Number LAW-249664564. All filings are due **on or before February 9, 2007**; responses are due **on or before February 23, 2007**.

BY THE COURT:

_Kim R. Gibson_
**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**

Cc: **All counsel of record**